## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## PALM BEACH DIVISION

**TRACEY SUTTON, an individual,**

      **Plaintiff,**

**vs.**
                                 CASE NO.

**AVIS BUDGET GROUP, INC. a**
**Foreign for Profit Corporation ,**
**AVIS BUDGET CAR RENTAL, LLC.**
**A foreign Limited Liability Company**

      **Defendant.**

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

      Plaintiff, Tracey Sutton by and through undersigned counsel, files this Complaint and Demand for Jury Trial against Defendant, Avis Budget Group, Inc., a Foreign for Profit Corporation ("AB Group"), and Avis Budget Car Rental, LLC., a foreign Limited Liability Company, collectively ("AB Rental" together with AB Group, the "Defendants") and states:

## PRELIMINARY STATEMENT

      1.      This is a claim by Plaintiff TRACEY SUTTON against her former employers, AB Group and AB Rental for violations of the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*, Section 510 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.*, and the Florida Civil Rights Act ("FCRA"), Fla. Stat. § 760 *et. seq.*

      2.      In enacting the Family Medical Leave Act, as amended, 29 U.S.C. § 2601, et seq. ("the FMLA"), Congress wished to remedy its finding that employees with serious health conditions have "inadequate job security" when they have to leave work for temporary periods. *See* 29 U.S.C. § 2601(a)(4).  The FMLA provides eligible employees, like Sutton with unpaid, job-protected leave in the event they are suffering from a serious medical condition.  26 U.S.C. §

2612(a)(1).  An employee that takes FMLA protected leave is entitled to return to the same position after coming back to work.  29 U.S.C. § 2614(a)(1).  Further, the FMLA makes it unlawful for an employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under the FMLA. 29 U.S.C § 2615(a)(1). Likewise, it is unlawful for an employer to discharge or discriminate against any individual for opposing any practice made unlawful under the FMLA.  29 U.S.C. § 2615(a)(2).

3.      The Americans with Disabilities Act, 42 U.S.C. § 12101, *et. seq*., as amended (the "ADAAA"), is also a remedial statute aimed at combating Congress's findings that discrimination against individuals with physical or mental disabilities persist in critical areas like employment, and our nation's goals with respect to individuals with disabilities is to assure equality of opportunity and participation. 42 U.S.C. § 12101(a)(1)-(8).  The ADAAA is meant to protect qualified employees, like Sutton, from discrimination, harassment and retaliation in the workplace on account of a real or perceived mental or physical disability, or for asking for a reasonable accommodation related to the disability.  42 U.S.C. § 12112.  The Florida Civil Rights Act, Fla. Stat. 760 et. seq. also protects against discrimination, harassment and retaliation in the workplace on account of real or perceived mental or physical handicap.

4.      The Employee Retirement Income Security Act ("ERISA") was passed in 1974. In passing the Act, Congress found that the "continued well-being and security of millions of employees and their dependents" depends directly on ensuring safeguards with respect to employee benefit plans. 29 U.S.C. § 1001(a).   Congress also found it to be "desirable in the interests of employees and their beneficiaries, for the protection of the revenue of the United States, and to provide for the free flow of commerce, that minimum standards be provided assuring the equitable character" of employee benefit plans under ERISA. *Id*.

5.      ERISA was enacted "to protect interstate commerce and the interests of

participants in employee benefit plans and their beneficiaries . . . establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the Federal courts." 29 U.S.C. § 1001(b). Section 510 of ERISA makes it unlawful "for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan." 29 U.S.C. § 1140.

6.      Plaintiff, Tracey Sutton, suffers from a disability/handicap that is also a chronic health condition entitling her to benefits under the FMLA, and protection from discrimination under the FCRA.  Ms. Sutton made Defendants aware of her condition, her treatment plan, and her need for leave. Ms. Sutton required surgery related to one of her disabilities and informed her supervisors, HR and third party administrators of her need for leave.  She was initially approved for FMLA leave beginning on or about May 11, 2017, and began her leave on or about that date. At the time she had 12 full weeks of FMLA leave available to her allowing her to take up to and including August 3, 2017 as continuous leave.  While Ms. Sutton had 12 weeks available to her, she only initially requested 3 or 4 weeks of leave.  Prior to the end of her leave, she contacted the company to let them know that she had been authorized by her physician to return to work with restrictions.  The Defendants failed to engage in the deliberative process and only offered a single form of accommodation, which Ms. Sutton was unable to use.  Ms. Sutton requested additional accommodations and was told by HR that they would need to run it by legal first and get back with Ms. Sutton.  In the meantime, Ms. Sutton remained on leave., and her schedules reflected that she was on a continuous leave through entire month of July.  In July, Ms. Sutton advised the company that she would be returning from leave on August 3, 2017, and again had doctor's restrictions.  She was again advised that Defendants were discussing her return to work restrictions.  Approximately one or two weeks later, Ms. Sutton received notice that her position

was terminated effective July 24, 2017, and that the company was treating her failure to return as a voluntary resignation.   Ms. Sutton had FMLA leave available to her and was not scheduled to return until August 3, 2017.  The state reason for Ms. Sutton's termination was manufactured after she disclosed her need for surgery and leave as a means of discriminating and retaliating against Ms. Sutton and/or interfering with her rights under the FMLA, Section 510 of ERISA and the FCRA.

7.      Accordingly, Ms. Sutton seeks all available relief in law and equity, including but not limited to: (i) a declaration from this Court that Defendants' actions were unlawful; (ii) back pay and front pay (where reinstatement is not feasible); (iii) medical expenses; (iv) compensatory damages in whatever amount she is found to be entitled; (v) liquidated damages in whatever amount she is found to be entitled; (vi) an award of interest, costs and reasonable attorney's fees and expert witness fees; (vii) punitive damages; (viii) equitable relief; (ix) declaratory relief; (x) pre-judgment and post-judgment interest (where allowable); and (xi) a jury trial on all issues so triable.

## JURISDICTION AND VENUE

8.      This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1337, and the FMLA and ERISA, and has authority to grant declaratory relief under the FMLA and pursuant to 28 U.S.C. § 2201 et seq.

9.      Venue is proper in this judicial district under 28 U.S.C. §1391 because Defendants do business in this judicial district, and the majority of the acts complained of took place in this judicial district.

## PARTIES

10.      At all times material hereto, Ms. Sutton was a resident of Palm Beach County, Florida.

11.     At all times material to this action, Avis Budget Group, Inc., was a continues to be a Foreign for Profit Corporation, doing business in Palm Beach County, Florida, and has continuously had at least 50 employees.

12.     At all times material to this action, Avis Budget Car Rental, LLC, was, and continues to be, a Florida Limited Liability Company, doing business in Palm Beach County, Florida and has continuously had at least 50 employees.

13.     At all times material to this action, Defendants operated within Palm Beach County, specifically the Avis Car Rental, located at 2500 Turnage Blvd., West Palm Beach, Florida 33406.

14.     At all times material to this action, Defendants operated within Palm Beach County, specifically the Budget Rent a Car located at 2005 Belvedere Road, West Palm Beach, Florida 33406.

15.     At all times material to this action, Defendants were "engaged in commerce" within the meaning of §6 and §7 of the FLSA.

16.     The FMLA defines the term "employer" to broadly include "any person acting directly or indirectly in the interest of an employer in relation to any employee".  29 U.S.C. 2611(4)(ii)(I).

17.     Defendants are employers as defined under the FLMA.

18.     "To be 'employed' includes when an employer 'suffer[s] or permit[s] [the employee] to work.'" *See Freeman v. Key Largo Volunteer Fire & Rescue Dept., Inc.*, 494 Fed. Appx. 940, 942 (11th Cir. 2012) cert. denied, 134 S.Ct. 62 (U.S. 2013).

19.     From in or around 2008 to her termination on or about July 24, 2017, Plaintiff was employed as an Operation Manager employee, working at Defendants' two separate locations in West Palm Beach: Avis Car Rental at 2500 Turnage Blvd., West Palm Beach,

Florida 33406 and Budget Rent a Car located at 2005 Belvedere Road, West Palm Beach, Florida 33406.

20.     Defendants employed Plaintiff as an Operations Manager employee.

21.     Defendants jointly employed Plaintiff.

22.     Defendants are employers under the FMLA because they were engaged in commerce or in an industry affecting commerce and employed 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year.

23.     At all times relevant hereto, Plaintiff worked at a location where Defendants, employed 50 or more employees.

24.     At all times relevant hereto, Defendants is an employer as defined by 29 U.S.C. 2611(4).

25.     At all times material to this action Defendants directly or indirectly, jointly or severally, controlled and directed the day to day employment of Plaintiff, including: (i) timekeeping; (ii) payroll; (iii) disciplinary actions; (iv) employment policies and procedures; (v) scheduling and hours; (vi) terms of compensation; and (vii) working conditions.

26.     At all times relevant hereto, Plaintiff was an employee entitled to leave under the FMLA, based on the fact that he was employed by the employer(s) for at least 12 months and worked at least 1,250 hours during the relevant 12-month period prior to her seeking to exercise her rights to FMLA leave.

27.     At all times material hereto, Plaintiff has a handicap as defined by Fla. Stat. 760 et. seq., that substantially limits one or more major life activities including major body functions. Specifically, Plaintiff suffers from chronic plantar fasciitis, an inflammation of the tissue that connects the heel bone to the toes, causing sharp pain, swelling and tenderness, and that required

surgical correction.  The handicap/disability causes her to be substantially limited in major life activities, including but not limited to walking and/or standing for prolonged periods of time, as well as normal circulatory and urologic function of her body.  Plaintiff advised her employer that due to the level of the pain, surgery was imminent and necessary.  Despite surgical intervention, Plantiff's chronic plantar fasciitis has not fully resolved.

28.     At all times relevant, Defendants have continuously been employers engaged in an industry affecting commerce within the meaning of Section 701(b),(g) and (h), as well as within the meaning of the ADA, 42 U.S.C. § 12111(5)..

29.     Plaintiff is covered by the FCRA because she is an individual who:

    a.  Has a physical impairment that substantially limits one or more major life activities or bodily functions;

    b.  Has a record of physical impairment that substantially limits one or more major life activities or bodily functions; and/or

    c.  Was regarded as having a physical impairment that substantially limits one or more major life activities or bodily functions.

30.     At all times relevant, Defendants were "employers" as defined by Fla. Stat. 760, *et. seq*.

**CONDITIONS PRECEDENT**

31.     On January 30, 2018, Plaintiff filed a charge of discrimination and retaliation with the Equal Employment Opportunity Commission, which was dual filed with the Florida Commission on Human Rights.

32.     Ms. Sutton has exhausted her administrative remedies available to her with respect to her state law claims, and her federal claims are still under investigation by the EEOC.

33.     Plaintiff files her complaint within the applicable statute of limitations.

34.     Jurisdiction over this claim is appropriate pursuant to Fla. Stat. Chap. 760 (FCRA), because more than 180 days passed since the filing of the charge, prior to the FCHR making a determination, and the Court has supplemental jurisdiction over Plaintiff's pendant state court claims as they arise out of the same facts as circumstances as the federal claims.

35.     All conditions precedent to this action have been satisfied and/or waived.

### GENERAL ALLEGATIONS

36.     At all times relevant to this action, Defendants failed to comply with 29 U.S.C. § 2601, et seq, and the FCRA, because Plaintiff validly exercised her rights pursuant to the FMLA/FCRA and Defendants: (i) interfered with Plaintiff's right to take FMLA leave; (ii) failed to provide Plaintiff with notice of her rights under the FMLA; (iii) discriminated against Plaintiff for taking FMLA leave; and (iv) retaliated against Plaintiff because she would need leave and actually took leave.

37.     At all times relevant to this action, Defendants failed to comply with the FCRA because Plaintiff disclosed the nature and extent of her disabilities, and as a result, Defendants discriminated and retaliated against Plaintiff because of her real or perceived disabilities.

38.     At all times relevant to this action, Plaintiff disclosed her need to use medical benefits provided by the Defendants' health and wellness medical benefits policies, and was subsequently discriminated and retaliated against because of her need to use such benefits and actual use of such benefits.

39.     Defendants operate a leading global provider of mobility solutions, operating three of the most recognized brands in the industry through Avis, Budget and Zipcar. http://avisbudgetgroup.com/about.   The Defendants brands operate out of more than 11,000 locations in approximately 180 countries, with approximately 30,000 employees globally.

40.     Ms. Sutton was hired as an Operation Manager employee with Defendants in or around March 2008.

41.     Ms. Sutton continued to work as an Operation Manager until her termination on or about July 24, 2017.

42.     During her employment with Defendants, Ms. Sutton was diagnosed with Chronic Plantar Fasciitis.

43.     Ms. Sutton requested and was granted FMLA leave starting on or about May 11, 2017 to undergo foot surgery.

44.     Prior to the end of her FMLA leave, Ms. Sutton presented a doctor's note allowing her to return to work starting June 19, 2017 with restriction.

45.     Defendants agreed and added Ms. Sutton on the schedule staring June 21, 2017.

46.     On June 20, 2017, Ms. Sutton received a call from City Manager, Mike O'Laughlin, and was told not to come in on June 21, because Ms. Sutton had restrictions and the Defendants did know how they were going to accommodate Ms. Sutton.

47.     On or about June 23, 2017, Ms. Sutton received a call from HR supervisor, Tiffany Gates telling her she spoke with "legal" and they were providing her a knee scooter as an accommodation.

48.     Ms. Sutton discussed her position and the many obstacles that would face her if she were required to use a knee scooter out in the massive parking lots at both locations.  She requested to remain indoors at the counter to be the Operations Manager focused on administrative and reporting work.

49.     She further discussed her need for follow up doctor's appointments and continued physical therapy.

50.     Defendants were aware that Plaintiff would use her medical benefits in connection with any medical appointments, physical therapy, or follow up surgery.

51.     Tiffany stated that she would discuss with legal and get back to her.

52.     On or around June 28, 2017. Ms. Sutton went back to the doctor, and the doctor exhausted the FMLA through August 3, 2017.

53.     Ms. Sutton advised Defendants of her FMLA extension.

54.     Subsequently, Ms. Sutton received an email from the scheduling manager, Ms. Lakeisha Ramsey, listing her as being on FMLA leave through the end of the month of July.

55.     While still on FMLA protected leave, Ms. Sutton received a certified letter in the mail terminating her as of July 24, 2017.

56.     The letter advised Ms. Sutton that since she did not return to work in June, the company was treating her failure to return as a resignation and there were terminating the employment relationship.

57.     Defendants' reason for terminating Plaintiff was pre-textual.

58.     Defendants' reason for termination Plaintiff was manufactured, post hoc, after Plaintiff engaged in activities protected by the FMLA, ERISA, and the FCRA.

59.     Ms. Sutton had a disability; she made the Defendants aware of this disability, and requested the paperwork to take FMLA leave for this disability.

60.     At the time of her termination, Plaintiff was eligible for FMLA leave.

61.     At the time of her termination, Plaintiff provided notice(s) to Defendants of her need for FMLA covered leave.

62.     Plaintiff's notice(s) for her need for leave was sufficient to alert Defendants that her request was for FMLA covered leave.

63.     Plaintiff's notice(s) for her need for FMLA covered leave was timely.

64.     Plaintiff's notice(s) for her need for FMLA covered leave complied with Defendant's company policy, if any, regarding requests for time off.

65.     Plaintiff suffered from a serious health condition as defined by the FMLA as her condition was:

a.     An illness, injury impairment, or physical or mental condition involving inpatient care in a hospital;

b.     An illness, injury impairment, or physical or mental condition involving a period of incapacity or subsequent treatment in connection with or consequent to in patient care in a hospital;

c.     An illness, injury impairment, or physical or mental condition involving a period of incapacity of more than three (3) days involving treatment two or more times by a health care provider;

d.     An illness, injury impairment, or physical or mental condition involving a regimen of continued treatment under supervision of a health care provider; and/or

e.     An illness, injury impairment, or physical or mental condition requiring multiple treatments for a condition that would likely result in a period in capacity of more than three (3) consecutive calendar days in the absence of medical intervention or treatment.

66.     Plaintiff was, at all times relevant, a qualified employee as defined by the FMLA and the FCRA.

67.     At all times relevant, Plaintiff provided Defendant with enough information so that Defendant could reasonably determine whether the FMLA and the FCRA applied to her need for time off work.

68.     Defendants failed to provide Plaintiff with notice of her return to work date and interfered with her ability to manage her own leave.

69.     Defendants' termination of Plaintiff on July 24, 2017 interfered with her right to take available FMLA-covered leave.

70.     Defendants' termination of Plaintiff on July 24, 2017 interfered with her right to reinstatement to the same or similar position after taking available FMLA-covered leave.

71.     Defendants' termination of Plaintiff on July 24, 2017 was in retaliation for Plaintiff requesting to taking FMLA-covered leave.

72.     Defendants' termination of Plaintiff on July 24, 2017 was in retaliation for having complained actually taken FMLA covered leave.

73.     Defendants' termination of Plaintiff on July 24, 2017 was in retaliation for having requested a reasonable accommodation.

74.     Defendants' termination of Plaintiff on April 24, 2017 was designed to dissuade Plaintiff's coworkers from taking FMLA-covered leave and/or complaining about discriminatory, harassing and hostile treatment.

75.     Defendants' termination of Plaintiff on July 24, 2017 was designed to dissuade Plaintiff's coworkers from asserting their rights under the FCRA.

76.     Defendants' fired Plaintiff in whole or in part because of her disability(ies) and/or perceived disability(ies).

77.     Defendants' termination of Plaintiff on July 24, 2017 interfered with the rights afforded to Plaintiff by ERISA, the FMLA, and the FCRA.

78.     Defendants' decision to terminate Plaintiff was motivated, in whole or in part, by the likelihood that Plaintiff would need FMLA-covered leave in the future.

79.     Defendants' decision to terminate Plaintiff was motivated, in whole or in part, by the likelihood that Plaintiff would need FCRA covered leave in the future.

80.     Defendants' decision to terminate Plaintiff was motivated, in whole or in part, by Plaintiff's exercising her rights under an employee benefit plan covered by ERISA (i.e. her need to seek medical treatment covered by her health insurance).

81.     Plaintiff's FMLA-covered absences and/or her likely need for future FMLA-covered leave was a substantial or motivating factor in Defendants' decision to terminate her.

82.     Plaintiff's exercising of her rights to an employee benefit plan covered by ERISA and/or her likely need for future benefits under his ERISA-covered plan was a substantial or motivating factor in Defendants' decision to terminate her.

83.     Plaintiff's disability/perceived disability was a substantial or motivating factor in Defendants' decision to terminated her.

84.     Defendants' decision to terminate Plaintiff was not wholly unrelated to Plaintiff's need for time off work under the FMLA.

85.     Defendants' decision to terminate Plaintiff was not wholly unrelated to Plaintiff's exercising of her rights under an employee benefit plan covered by ERISA.

86.     Defendants' decision to terminate Plaintiff was not wholly unrelated to Plaintiff's disability/perceived disability.

87.     Plaintiff was entitled to FMLA-covered leave pursuant to 29 U.S.C. §2612(a)(1).

88.     Defendants' actions violate the provisions of 29 U.S.C. §2615(a).

89.     Defendants' actions violate the provisions of 29 U.S.C. §2614(a).

90.     Defendants' actions constitute interference with Plaintiff's rights under the FMLA.

91.     Defendants' actions constitute retaliation in violation of Plaintiff's rights under the FMLA.

92.     Defendants' actions constitute discrimination in violation of Plaintiff's rights under the FMLA.

93.     Defendants' actions constitute discrimination in violation of Plaintiff's rights under Section 510 of ERISA.

94.     Defendants' actions constitute interference with Plaintiff's right to an employee benefit plan covered by ERISA.

95.     Defendants' actions constitute discrimination in violation of the FCRA.

96.     Defendants' actions constitute interference with Plaintiff's rights under the FCRA.

97.     Defendants' actions constitute retaliation for requesting a reasonable accommodation under the FCRA.

98.     Defendants' actions were willful as Defendants knew or had reason to know that its actions violated federal law, yet Defendants acted wantonly or with reckless disregard for the law.

99.     Defendants are liable for the actions of its managers and/or agents taken within the scope of their employment with Defendants and its related entities, including the decision to terminate Plaintiff.

100.    Defendants' actions, if left unchecked, will deter other employees from exercising their rights under ERISA, the FCRA and/or the FMLA which will in turn thwart the purposes of Congress in ensuring that a balance exists between work and healthy workers.

**COUNT I**

## **INTERFERENCE WITH FMLA RIGHTS**

101.    Plaintiff re-alleges paragraphs 1 through 100 of the Complaint, as if fully set forth herein.

102.    Plaintiff was, at tall time relevant, eligible for FMLA-covered leave.

103.    Defendants were Plaintiff's employer as defined by the FMLA.

104.    At all times relevant hereto, Defendants interfered with Plaintiff's right to take FMLA leave under the FMLA.

105.    At all times relevant hereto, Defendants interfered with Plaintiff's right to manage her own leave under the FMLA.

106.    At all times relevant hereto, Defendants interfered with Plaintiff's right to be reinstated to the same or similar position at the end of her FMLA leave.

107.    At all times relevant hereto, Defendants' interference with Plaintiff's right to leave and reinstatement violated the FMLA.

108.    At all times relevant hereto, Defendants' interference with Plaintiff's right to manage her own leave violated the FMLA.

109.    Plaintiff suffered from a disability that also qualifies as a "serious health condition" within the meaning of the FMLA.

110.    Plaintiff's condition is "chronic" within the meaning of the FMLA.

111.    Plaintiff was entitled to FMLA protected leave.

112.    Defendants are subject to the requirements of the FMLA.

113.    Plaintiff provided adequate notice of her serious health condition to Defendants.

114.    Defendants are aware of Plaintiff's serious health condition and her need for FMLA protected leave.

115.    Plaintiff had not exhausted her entitlement to FMLA leave at the time.

116.    Defendants failed to provide Plaintiff with notice of her return to work date.

117.    Defendants terminated Plaintiff while she was out on a protected FMLA leave, and had approximately two weeks of FMLA leave left.

118.    By terminating Plaintiff while on approved FMLA leave, Defendants interfered with Plaintiff's right for leave, reinstatement, and to future FMLA benefits.

119.    By failing to provide Plaintiff with notice of her return to work date, Defendants interfered with Plaintiff's right to manage her own leave.

120.    Plaintiff was denied benefits to which she was entitled under the FMLA.

121.    As a result of Defendants' intentional, willful and unlawful acts by interfering with Plaintiff's rights pursuant to the FMLA, Plaintiff has suffered damages and incurred reasonable attorneys' fees and costs.

122.    Plaintiff is entitled to liquidated damages because Defendants cannot show that its violation of the FMLA was in good faith.

123.    Defendants' violation of the FMLA was willful, as its managers engaged in the above-described actions while knowing that same were impermissible under the FMLA.

124.    Plaintiff demands a trial by jury.

WHEREFORE Plaintiff, Tracey Sutton, respectfully requests entry of:

     a.    judgment in her favor and against Defendants for their interference with her rights under the FMLA;

     b.    judgment in her favor and against Defendants for damages, including lost earnings and benefits, reinstatement, front pay, and/or all actual monetary losses suffered as a result of Defendants' conduct;

     c.    judgment in her favor and against Defendants for her reasonable attorneys' fees and litigation expenses;

d.   judgment in her favor and against Defendants for liquidated damages pursuant to 29 U.S.C. § 2617(a)(1)(A)(iii);

e.   declaratory judgment that Defendants' actions toward Plaintiff violate Plaintiff's rights under the FMLA; and

f.   an order granting such other and further relief as this Court deems just and equitable under the circumstances of this case.

## COUNT II
## FMLA RETALIATION

125.   Plaintiff re-alleges paragraphs 1 through 100 of the Complaint, as if fully set forth herein.

126.   At all times relevant hereto, Defendants retaliated against Plaintiff, at least in part because Plaintiff wished to exercise her right or attempted to exercise her right to take leave from work that was protected under the FMLA.

127.   With actual knowledge of Plaintiff's need for leave, disability and serious health condition, Defendants terminated Plaintiff's employment while she was still on FMLA leave, and before her FMLA leave was exhausted.

128.   At all times relevant hereto, Defendants retaliated against Plaintiff in violation of the FMLA.

129.   As a result of Defendants' intentional, willful and unlawful acts of retaliating against Plaintiff for exercising her rights pursuant to the FMLA, Plaintiff has suffered damages and incurred reasonable attorneys' fees and costs.

130.   Because Defendants cannot prove that their violation of the FMLA was in good faith, Plaintiff is entitled to liquidated damages.

131.     Defendants' violation of the FMLA was willful, as its managers / human resource personnel engaged in the above-described actions while knowing that same were impermissible under the FMLA.

WHEREFORE, Plaintiff, Tracey Sutton, respectfully requests entry of:

a.      judgment in her favor and against the Defendants for violation of the anti-discrimination/anti-retaliation provisions of the FMLA;

b.      judgment in her favor and against the Defendants for damages, including lost earnings, reinstatement, front pay, and/or all actual monetary losses suffered as a result of Defendants' conduct;

c.      judgment in her favor and against the Defendants for her reasonable attorneys' fees and litigation expenses;

d.      judgment in her favor and against Defendants for liquidated damages pursuant to 29 U.S.C. § 2617(a)(1)(A)(iii);

e.      declaratory judgment that Defendants' actions toward Plaintiff violate Plaintiff's rights under the FMLA; and

f.      an order granting such other and further relief as this Court deems just and equitable under the circumstances of this case.

## COUNT III
## UNLAWFUL DISCRIMINATION/RETALIATION/ FAILURE TO ACCOMMODATE IN VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT (Fla. Stat. 760 et. seq.)

132.     Plaintiff re-alleges paragraphs 1 through 100 of the Complaint, as if fully set forth herein.

133.     Plaintiff's conditions substantially limited one or more of Plaintiff's major life activities. Plaintiff's condition was a disability or handicap as defined by the FCRA.

134.    Plaintiff was qualified to perform the essential functions of her job, with or without reasonable accommodation.

135.    Plaintiff requested a reasonable accommodation.

136.    Defendants' are aware of Plaintiff's disability, and/or regarded Plaintiff as disabled because of her disability.

137.    Defendants terminated Plaintiff on the basis of her disability or because Defendants regarded Plaintiff as disabled because of her disability in violation of the FCRA.

138.    Further, Defendants terminated Plaintiff in retaliation for having requested a reasonable accommodation.

139.    Additionally, Defendants failed to reasonably accommodate Plaintiff, and further failed to engage in the necessary deliberative process.

140.    As a result of Defendants' conduct set forth above, Plaintiff is entitled to compensation for any and all lost wages and benefits, compensatory damages, and reasonable attorney's fees and costs.

141.    Defendants engaged in discrimination, retaliation, and failure to accommodate Plaintiff with malice and reckless indifference to Plaintiff's rights under the FCRA.

142.    Plaintiff suffered emotional pain and mental anguish as a direct result of Defendants' unlawful discrimination.

143.    Plaintiff has suffered pecuniary losses as a direct result of Defendants' unlawful discrimination and retaliation.

144.    As a result of Defendants' unlawful discrimination and retaliation Plaintiff has suffered and continues to suffer damages.

145.    Plaintiff demand trial by jury.

WHEREFORE, Plaintiff, Tracey Sutton, respectfully requests entry of:

    a.    judgment in her favor and against Defendants for violation of the anti-discrimination/anti-retaliation/accommodation provisions of the FCRA;

    b.    judgment in her favor and against Defendants for economic damages, including lost earnings, reinstatement, front pay, and/or all actual monetary losses suffered as a result of Defendants' conduct;

    c.    judgment in her favor and against Defendants for noneconomic damages, including but not limited to, pain, suffering, mental anguish, emotional distress, and/or loss of enjoyment of life suffered as a result of Defendants' conduct.

    d.    judgment in her favor and against Defendants for her reasonable attorneys' fees and litigation expenses;

    e.    judgment in her favor and against Defendants for punitive damages;

    f.    declaratory judgment that Defendants' practices toward Plaintiff violate Plaintiff's rights under the FCRA; and

    g.    an order granting such other and further relief as this Court deems just and equitable under the circumstances of this case.

### COUNT VI
### VIOLATION OF SECTION 510 ERISA

146.    Plaintiff re-alleges paragraphs 1 through 100 of the Complaint, as if fully set forth herein.

147.    Defendants provided Plaintiff with an employee welfare plan as defined by 29 U.S.C. §1002(a), specifically health insurance.

148.    Beginning in 2008 and continuing until her unlawful termination, Plaintiff was enrolled in the benefits provided under the company's health insurance plan.

149.     Plaintiff's supervisors and human resources were aware that Plaintiff needed to have surgery, follow up doctor appointments and physical therapy.

150.     Defendants knew or should have known that Plaintiff's utilization of her employee benefit plan would continue, particularly since she requested FMLA leave to undergo surgery and follow up care.

151.     Defendants retaliated/discriminated against Plaintiff by terminating her employment.

152.     Defendants interfered with Plaintiff's right to exercise her ERISA-covered employee benefit plan.

153.     Defendants' termination of Plaintiff was designed, in part, to discourage other employees from taking sick days and/or filing claims under their employee benefit plans.

154.     Defendants fired Plaintiff, in whole or in part, because Defendant did not wish to bear the costs of Plaintiff's healthcare.

155.     Defendants interfered with Plaintiff's right to obtain medical care.

156.     Defendants discriminated against and discharged Plaintiff for exercising her right to medical care under the company's employee benefit plan.

157.     Defendants fired Plaintiff in violation so 29 U.S.C. § 1140.

WHEREFORE, Plaintiff Tracey Sutton hereby demands entry of judgment in her favor and against Defendants, for any and all equitable and legal relief available including but not limited to payment of all medical bills, economic and non-economic damages, statutory damages, reinstatement and back pay as required by ERISA, as well as payment of her attorneys' fees and costs pursuant to 29 U.S.C. § 1132(g).

## <u>JURY DEMAND</u>

Plaintiff demands trial by jury on all issues so triable as a matter of right by jury.

Dated this 24th day of July 2019.

Respectfully submitted,

**MORGAN & MORGAN, P.A.**
<u>s/*Paul M. Botros*              </u>
Paul M. Botros, Esquire
FL Bar No.:  063365
8151 Peters Road
Suite 4000
Plantation, FL 33324
Tel: 954-318-0268
Fax: 954-327-3017
pbotros@forthepeople.com